UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Melissa Jean Hebert,
        Claimant

        v.                              Case No. 13-cv-102-SM
                                        Opinion No. 2014 DNH 166

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
        Defendant

## O R D E R

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Melissa Hebert, moves to reverse or vacate the Acting Commissioner's decision denying her applications for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI, 42 U.S.C. §§ 1381-1383c (collectively, the "Act").  The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is denied, and the Acting Commissioner's motion is granted.

**Factual Background**

I.  <u>Procedural History</u>.

In 2009, claimant filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging that she had been disabled since November 11, 2008.  Those applications were denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In November of 2011, claimant, her attorney, and an impartial vocational expert appeared before an ALJ, who considered claimant's applications de novo.  The following month, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.  Claimant then sought review of the ALJ's decision by the Appeals Council.  On January 9, 2013, the request was denied.

Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.  She then filed a "Motion for an Order Reversing Decision of the Commissioner" (document no. 9).  In response, the Acting Commissioner filed a "Motion for Order

Affirming the Decision of the Commissioner" (document no. 14).

Those motions are pending.


II.  Stipulated Facts.

     Pursuant to this court's Local Rule 9.1, the parties have

submitted a statement of stipulated facts which, because it is

part of the court's record (document no. 13), need not be

recounted in this opinion.  Those facts relevant to the

disposition of this matter are discussed as appropriate.


## Standard of Review

I.  "Substantial Evidence" and Deferential Review.

     Pursuant to 42 U.S.C. § 405(g), the court is empowered "to

enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the

cause for a rehearing."  Factual findings and credibility

determinations made by the Commissioner are conclusive if

supported by substantial evidence.  See 42 U.S.C. §§ 405(g),

1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health &

Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial

evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Consolidated Edison

Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than

a preponderance of the evidence, so the possibility of drawing
two inconsistent conclusions from the evidence does not prevent
an administrative agency's finding from being supported by
substantial evidence.  Consolo v. Federal Maritime Comm'n., 383
U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S.
389, 401 (1971).


II.   The Parties' Respective Burdens.

     An individual seeking Social Security disability benefits is
disabled under the Act if she is unable "to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The Act
places a heavy initial burden on the claimant to establish the
existence of a disabling impairment.  See Bowen v. Yuckert, 482
U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human
Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden,
the claimant must prove, by a preponderance of the evidence, that
her impairment prevents her from performing her former type of
work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985);
Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If
the claimant demonstrates an inability to perform her previous

work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience.  See Seavey v. Barnhart. 276 F.3d 1, 5 (1st Cir. 2001).  See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of
> such severity that [she] is not only unable to do [her]
> previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which [she] lives, or
> whether a specific job vacancy exists for [her], or
> whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.

## Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability: November 11, 2008.  Admin. Rec. (document no. 7) at 15.  Next, he concluded that claimant suffers from the following severe impairments: "Fibromyalgia syndrome, obesity, patello-femoral arthritis, a mood disorder, an anxiety disorder and a history of polysubstance abuse (currently in remission)."  Id.  Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  Admin. Rec. at 16-18.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of a range of light work.[1]  He noted, however, that claimant:

> is limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling.  She is limited to simple instructions, but can concentrate and persist at such tasks for 2-hour intervals.  She is able to interact with supervisors and co-workers on a routine basis.  She is limited to superficial interaction with the public.  She is limited to working one-to-one with co-workers and should not interact with the public. She can adapt to routine changes, but should be limited to making only routine work-related decisions.

Id. at 18.  In light of those restrictions, and based upon the testimony of the vocational expert, the ALJ concluded that claimant was not capable of performing any of her past relevant work.  Id. at 21.

Finally, the ALJ considered whether there were any jobs in the national economy that claimant might perform.  Relying upon

---

[1]    "RFC is what an individual can still do despite his or her functional limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

the testimony of a vocational expert, the ALJ concluded that notwithstanding claimant's exertional and non-exertional limitations, she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 22. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.

### Discussion

Claimant challenges the ALJ's decision on three grounds, asserting that he erred by: (1) failing to properly determine claimant's residual functional capacity; (2) failing to properly assess and weigh the opinions of claimant's medical providers; and (3) failing to properly assess claimant's credibility.

### I.   Claimant's Residual Functional Capacity.

Claimant challenges the ALJ's determination that she was capable of performing a range of light work, asserting that the ALJ relied upon medical opinions that failed to take into consideration the debilitating effects of her fibromyalgia, diarrhea, constipation, and fatigue. She also says the ALJ failed to properly account for her mental limitations and erroneously found she was capable of performing jobs that are inconsistent with her GED reasoning level. The court disagrees.

The ALJ afforded substantial weight to the opinions of the state agency reviewing physicians John MacEachran and Aroon Suansilppongse.  Admin. Rec. at 20.  See also Id. at 416-23 (Residual Functional Capacity Assessment completed by John MacEachran, M.D.); Id. at 398-411 (Psychiatric Review Technique completed by Aroon Suansilppongse, M.D.); and Id. at 412-14 (Mental Residual Functional Capacity Assessment prepared by Aroon Suansilppongse, M.D.).  The ALJ noted that those assessments of claimant's impairments and capabilities were prepared prior to her having been diagnosed with fibromyalgia.  But, he also supportably concluded that claimant's fibromyalgia, even when considered together with her other impairments, did not render her disabled.

> Greater weight is afforded to the opinions of State
> Agency reviewing physicians, Dr. MacEachran and Dr.
> Suansilppongse.  Dr. MacEachran's opinion is well
> articulated and persuasive.  He addressed the limited
> objective results along with the claimant's activities
> of daily living as well as some inconsistencies in her
> medical record.  Similarly, Dr. Suansilppongse's
> assessment is also well reasoned and well supported by
> medical source examination results, by the claimant's
> daily activities and by evidence of her minimal
> subsequent treatment.  While the claimant was diagnosed
> with Fibromyalgia after her records were seen by Dr.
> MacEachran, her report of her daily activities is quite
> consistent with her activity level prior to this
> diagnoses.  Finally, no treating physician has opined
> that claimant is unable to work.

Admin. Rec. at 20.  As the Acting Commissioner notes, the ALJ is permitted to rely upon a non-examining medical source's opinions

even when that source did not have access to subsequently-produced medical evidence, provided that evidence does not establish the existence of any greater limitations.  See, e.g., Ferland v. Astrue, 2011 WL 5199989 at *4, 2011 DNH 169 (D.N.H. Oct. 31, 2011) ("[A]n ALJ may rely on [the opinion of a non-examining medical source] where the medical evidence post-dating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not 'clearly inconsistent' with, the reviewer's assessment.") (citations omitted).

Such was the case here.  Notwithstanding claimant's assertions to the contrary, there was little evidence to support a finding that her fibromyalgia further limited her ability to engage in substantial gainful activity.  While claimant points to the office notes of Heather Marks, M.D., those notes merely recount claimant's statements to Dr. Marks about her abilities; they do not contain any results from diagnostic or occupational testing, nor do they appear to represent Dr. Marks's independent assessment of claimant's abilities.  See generally Scanlon v. Astrue, 2013 WL 3229677 at* 4 n.2, 2013 DNH 88  (D.N.H. June 25, 2013) ("An ALJ need not give great weight to a physician's narratives that rely more on the claimant's subjective reports to

the physician than they rely on his or her own observations or
clinical findings.") (citations and internal punctuation
omitted).

The ALJ adequately explained his decision to afford greater
weight to the opinions of the state agency physicians, as well as
his decision to discount those of Dr. Marks.  He also supportably
concluded that claimant's subsequent diagnosis of fibromyalgia
did not undermine the opinions rendered by Dr. MacEachran and Dr.
Suansilppongse.

As for claimant's assertion that her diarrhea and
constipation further erode the relevant occupational base, there
is little evidence in the record to support her claim that she
would require anything more than regularly scheduled work breaks
- something the vocational expert testified could be accommodated
by the jobs he concluded claimant could perform.  See Admin. Rec.
at 73-74.  The ALJ did not err in determining that claimant could
perform a job that afforded her regularly scheduled breaks,
during which she could "get away from the job if needed."  Id. at
73.

Next, claimant focuses on the psychiatric evaluation
prepared by Stephanie Griffin, PhD, see Admin. Rec. at 374-76,

11

asserting that the ALJ failed to afford it appropriate weight.
But, because Dr. Griffin was a non-treating source, her opinions
were not entitled to controlling weight.  See generally 20 C.F.R.
§ 404.1527(c).  As the Acting Commissioner notes, claimant's
primary care physician treated claimant for mental health issues.
And, those records were available to, and reviewed by, Dr.
Suansilppongse in forming his opinions (to which the ALJ afforded
substantial weight).  Claimant's assertion that the ALJ
misconstrued Dr. Suansilppongse's opinions, see claimant's
memorandum at 9-10), are unavailing.  The ALJ's determination of
claimant's RFC is consistent with those opinions, which Dr.
Suansilppongse summarized as follows:

> The claimant is able to understand and remember simple
> instructions.  She is able to carry out simple
> instructions.  Her ability for sustained concentration
> and persistence or for task completion would be
> minimally limited due to anxiety and depressive
> reaction as well as alleged pain.  Her ability for
> appropriate interaction with supervisors, coworkers or
> the public would be minimally limited due to social
> avoidance and infrequent episodes of panic attacks,
> irritability, anger and antisocial behavior.  Her
> adaptability in a routine work setting would be
> minimally limited due to transient cognitive
> dysfunction and polysubstance abuse.
>
> The psychiatric impairment severity does not meet or
> equal any Listing.  The claimant has mental capacity
> for simple work related activity with infrequent
> contact with the public.  Diagnoses: 1. Mood Disorder
> NOS r/o Posttraumatic Stress Disorder, 2. Polysubstance

> Abuse/Dependence.  The claimant's allegations are
> considered partially credible.

Admin. Rec. at 396-97 ("Case Analysis" provided by Dr.

Suansilppongse).


    Finally, claimant asserts that her residual functional

capacity (as determined by the ALJ) was inconsistent with each of

the jobs identified by the vocational expert as ones she could

perform.  Specifically, she says that, "each of the three jobs

[c]ited by the VE [is] unskilled and the VE testified that they

all have a level 2 in the reasoning division of the GED scale,

meaning that they require more than the ability to carry out

simple instructions which was the limitation imposed by the ALJ's

RFC."  Claimant's memorandum at 11-12.[2]

---

[2]   The Dictionary of Occupational Titles defines "General
Educational Development" ("GED") as "those aspects of education
(formal and informal) which are required of the worker for
satisfactory job performance.  This is education of a general
nature which does not have a recognized, fairly specific
occupational objective."  Dict. of Occupational Titles, Vol. II,
Appendix C (4th ed. 1991) at 1009-12.  The GED scale is comprised
of three sections, one of which is "reasoning."  Level 1
reasoning requires the individual to "carry out simple one or
two-step instructions."  Level 2, on the other hand, requires the
individual to "apply common sense understanding to carry out
detailed but uninvolved written or oral instructions [and to]
deal with problems involving a few concrete variables in or from
standardized situations."  Id. at 1011.
    Claimant asserts that her RFC precluded her from performing
any jobs requiring Level 2 reasoning.

The relevant portion of the ALJ's RFC determination provides that claimant is "limited to simple instructions, but can concentrate and persist at such tasks for 2-hour intervals." Admin. Rec. at 18.  Although claimant has pointed to no precedent in support of her position, the Acting Commission has cited several courts that have addressed, and rejected, precisely the argument claimant advances.  Most recently, the United States District Court for the District of Massachusetts (Saylor, J.) observed the following:

> To support the proposition that limitation to "simple" work is inconsistent with GED reasoning level of 2, plaintiff largely relies upon cases from the District of Maine.  Since the filing of the parties' briefs, however, the Maine District Court has reexamined and vacated its line of cases finding a discrepancy between a limitation to simple tasks or instructions and a GED reasoning level of 2.  The [Maine] court noted that [those earlier cases] are "increasingly in the minority" on the question of whether a limitation to simple instructions or tasks conflicts with a GED reasoning level of 2, and that DOT definitions, created by the Department of Labor, are not necessarily totally compatible with regulations created by the Social Security Administration.  It found persuasive the reasoning of the court in Meissl v. Barnhart, 403 F. Supp. 2d 981, 983-84 (C.D. Cal. 2005), which contrasted the Social Security Administration's separation of a claimant's ability to understand, remember, and carry out instructions into merely two categories ("simple" and "detailed") with the DOT's more graduated scale of six reasoning levels, and determined that the use of the terms "simple" and "detailed" in the Social Security regulations cannot necessarily be equated with the use of the same words in the GED reasoning scale. The court in Meissl also highlighted the fact that the term "detailed" in the GED reasoning level 2 appears as

part of the phrase "detailed but uninvolved" — "that
is, not a high level of reasoning." Meissl, 403 F.
Supp. 2d at 985.

Lafrennie v. Astrue, 2011 WL 1103278, *7 -9 (D. Mass. 2011)
(citations and internal punctuation omitted).  See also Pepin v.
Astrue, 2010 WL 3361841, *4-5 (D. Me. 2010) ("The clear majority
of the courts that have addressed this issue since 2005,
including three circuit courts of appeal, agree with the Meissl
court.").  See generally Auger v. Astrue, 792 F. Supp. 2d 92, 96-
97 (D. Ma. 2011) (collecting cases).


     This court joins the majority of district and circuit courts
in holding that an RFC limiting a claimant to jobs involving
"simple instructions" does not, standing alone, eliminate
positions identified in the DOT as requiring "Level 2" reasoning.


II.  Treating Source Opinions.

     In discussing the weight that will be ascribed to the
opinions of "treating sources," the pertinent regulations
provide:

          Generally, we give more weight to opinions from [the
          claimant's] treating sources, since these sources are
          likely to be the medical professionals most able to
          provide a detailed, longitudinal picture of [the
          claimant's] medical impairment(s) . . .  When we do not
          give the treating source's opinion controlling weight,
          we apply the factors listed [in this section] in
          determining the weight to give the opinion.  We will

> always give good reasons in our notice of determination
> or decision for the weight we give [the claimant's]
> treating source's opinion.

20 C.F.R. § 404.1527(c)(2). <u>See also</u> Social Security Ruling,

<u>Policy Interpretation Ruling Titles II and XVI: Giving</u>

<u>Controlling Weight to Treating Source Medical Opinions</u>, SSR 96-

2p, 1996 WL 374188 (July 2, 1996). Importantly, however, there

is no per se rule requiring the ALJ to give controlling weight to

the opinion of a treating source; to be entitled to such weight,

a treating source's opinions must be "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and

[cannot be] inconsistent with the other substantial evidence in

[the] case record."  20 C.F.R. § 404.1527(c)(2).


Claimant asserts that the ALJ erred by failing to adequately

consider Dr. Marks's statement that claimant "has great

difficulty lifting any more than 10 lbs. She has difficulty

sitting still or standing still and has to shift positions

frequently." Admin. Rec. at 452. As noted above, however, Dr.

Marks's notes merely recount claimant's statements about her

abilities; those notes do not contain any results from diagnostic

or occupational testing, nor do they appear to represent Dr.

Marks's independent assessment of claimant's abilities. Indeed,

as the Acting Commissioner points out, those notes are contained

within a section of Dr. Marks's report entitled "Subjective."

Moreover, the ALJ adequately explained his decision to afford Dr. Marks's "opinions" less than controlling weight.

> The undersigned has also considered the statements made in Dr. Heather Marks's record at Exhibit 13F, p.18. She noted that the claimant had difficulty lifting any more than 10 pounds and that she needed to shift positions frequently.  However, [Dr. Marks] did not report any observations of such limitations.  It is also noted that the claimant had not complied with treatment and had stopped her medication without discussing it with this physician.

Admin. Rec. at 20.[3]

Finally, claimant asserts that the ALJ "ignored the diagnosis of fibromyalgia and all the symptoms and limitations that result from that diagnosis," claimant's memorandum at 14 - despite the fact that the ALJ specifically found that fibromyalgia syndrome is one of claimant's severe impairments. Again, the court disagrees.  The ALJ properly considered claimant's medical records, explained why he was affording more weight to some medical opinions than others, and concluded that

---

[3]    Dr. Marks observed that, due to the cost of prescribed medications, claimant did not comply with some of her prescribed treatments.  See Admin. Rec. at 452 ("I told her I would be increasing the dose [of Neurontin].  However, she stopped this medication prior to any increase in her dose due to cost.").  Dr. Marks also noted that she told claimant that, although she claimed to experience continued symptoms from fibromyalgia, "she has not yet tried or failed all of the drug therapy available for fibromyalgia."  Id.

the symptoms and limitations imposed by claimant's fibromyalgia
were not as significant as she claimed.

> In sum, while the claimant's physical impairments are
> significant, they have been managed symptomatically
> with medications such as Cymbalta.  Consistent with
> Fibromyalgia in particular, objective medical signs
> have been limited.  Moreover, the claimant's activities
> of daily living show a relatively active lifestyle
> (Exhibit 5E and testimony).  The claimant's testimony
> challenging such statements is not entirely credible as
> it is now self-serving.  The undersigned similarly
> calls into question her credibility given significant
> inconsistencies regarding her substance abuse as late
> as 2010.  In short, while the claimant has some
> significant issue[s] related to both her mental health
> and physical functioning, the evidence simply does not
> support the level of impairment alleged by her.

Admin. Rec. at 20-21.  Those findings are supported by
substantial evidence in the record.


III. Claimant's Credibility.

Finally, claimant challenges the ALJ's conclusion that some
of her assertions of disabling limitations - particularly those
related to symptoms of fibromyalgia - were less than entirely
credible.  As noted above, however, the ALJ adequately grounded
his findings - including those relating to claimant's credibility
- in the factual record.  While the court of appeals for this
circuit has recognized that, "[t]he primary symptom of
fibromyalgia, of course, is chronic widespread pain," Johnson v.
Astrue, 597 F.3d 409, 414 (1st Cir. 2009), the ALJ did not

discredit claimant's subjective complaints of pain.  Instead, he merely concluded that they were overstated.  It is, perhaps, worth noting that, "the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." McKenzie v. Commissioner, Social Security Administration, 2000 WL 687680, 5 (6th Cir. 2000).

Here, while claimant plainly suffers from fibromyalgia, the ALJ concluded, based upon substantial evidence in the record, that it did not render her disabled.  And, he supportably found that claimant's assertions to the contrary were not entirely credible.  Cf. Cusson v. Liberty Life Assur. Co., 592 F.3d 215, 227 (1st Cir. 2010) ("We recognize that fibromyalgia is a disease that is diagnosed primarily based on a patient's self-reported pain symptoms.  However, Liberty's reviewers did not question the diagnosis of fibromyalgia; instead, they questioned the effect of the disease on Cusson's ability to work.  This court draws a distinction between requiring objective evidence of the diagnosis, which is impermissible for a condition such as fibromyalgia that does not lend itself to objective verification, and requiring objective evidence that the plaintiff is unable to work, which is allowed.  Because it is permissible to require documented, objective evidence of disability, it was not

inappropriate for Liberty's reviewers to rely on the lack of such documented evidence . . . in making their recommendations.") (citations and internal punctuation omitted).

### Conclusion

This court's review of the ALJ's decision is both limited and deferential.  It is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether she is, in fact, disabled.  Rather, the court's inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  Provided the ALJ's findings are properly supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  Such is the nature of judicial review of disability benefit determinations.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").  Consequently, while there is certainly substantial evidence in the record demonstrating that claimant experiences pain and discomfort as a result of her fibromyalgia, and that she suffers

from anxiety and depression, the existence of such evidence is not sufficient to undermine the ALJ's decision, which is also supported by substantial evidence.

Having carefully reviewed the administrative record (including the testimony of the claimant and the vocational expert), as well as the arguments advanced by both the Acting Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled at any time prior to the date of his decision (December 28, 2011).  The ALJ's determination of claimant's RFC, his weighing of the various medical opinions of record, and his credibility determination are well-reasoned and supported by substantial documentary evidence.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 9) is denied, and the Acting Commissioner's motion to affirm her decision (document no. 14) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 6, 2014

cc:  Elizabeth R. Jones, Esq.
     T. David Plourde, Esq.